USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/30/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
SHARME CAGLE, :
:
Plaintiff, :
: 22-cv-6951 (LJL)
-v- :
: OPINION AND ORDER
WEILL CORNELL MEDICINE, :
:
Defendant. :
:
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

*Pro se* plaintiff Sharme Cagle ("Plaintiff") brings this action under Title VII of the Civil Rights Act of 1964, and Title I of the American Disability Act of 1990, alleging that defendant Cornell University, sued as Weill Cornell Medicine ("Defendant"), discriminated against her based on her religious beliefs and practices and illegally terminated her from her position as a practical nurse.  Currently before the Court is Defendant's motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief can be granted.

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

For the purposes of this motion, the Court accepts the allegations of the *pro se* complaint as true and "construes [them] broadly and liberally, interpreting them so as to raise the strongest arguments they suggest." *Genao v. City of N.Y.*, 2021 WL 2111817, at *2 (S.D.N.Y. May 25, 2021).  Weill Cornell Medicine is a hospital in New York City.  Dkt. No. 2 ("Complaint" or "Compl.") ¶ 2.  At the time of the events alleged in the Complaint until the termination of her employment on September 2, 2021, Plaintiff was employed by Defendant.  *Id.* ¶ 3.  Defendant

asserts, and Plaintiff does not refute, that she was employed as a practical nurse in the Department of Endocrinology. Dkt. No. 10 at 3.

At the time, Defendant was subject to a New York Department of Health ("NYDOH") mandate issued on August 26, 2021, pertaining to hospitals and other medical entities, instructing the institutions to require eligible personnel to be fully vaccinated against COVID-19 (the "Mandate"). N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021) ("Section 2.61"). The Mandate applied to "personnel" of the covered entities, defined to include all employees "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." *Id.* § 2.61(a)(2). The Mandate lists an exception only for employees for whom the vaccination would be detrimental to their health. *Id.* § 2.61(d)(1). Employees of covered entities were required to document medical exemptions by (i) September 27, 2021, for general hospitals and nursing homes; and (ii) October 7, 2021, for all other covered entities. The Mandate did not contain a religious exemption.

On or around August 19, 2021, Plaintiff "started a case with [Defendant's Human Resources Department], requesting more time and guidance on submitting [her] religious exemption" request. Compl. ¶ 4. She alleges that she did not receive a response from the Human Resources Department until August 31, 2021, one day before Defendant's deadline for all employees to either be vaccinated against the COVID-19 disease or resign from their position. *Id.* If employees did not receive a vaccination by that date, they would be put on unpaid leave until they submitted proof of vaccination. *Id.* ¶ 5. After receiving a response from Human Resources,[1] Plaintiff immediately submitted a religious exemption request to Defendant's Chief Administrator Dr. Laura Alonso, Division Administrator Andrew Crawford,

---

[1] Plaintiff does not allege the content of the response.

2

and Human Resources Representative Jennifer Alberto, the individual overseeing her case for exemption in Human Resources.  *Id.* ¶¶ 5–6.  The response from the Human Resources Department to her religious-exemption request stated that the "deadline for religious exemption[s] was on [August 1, 2021], and all employees are now required to get vaccinated or agree to quit their jobs."  *Id.* ¶ 6.  Plaintiff's employment was terminated on or around September 2, 2021.  *Id.* ¶ 3.  As of August 15, 2022, the date of the Complaint, Plaintiff's employment had not been reinstated.  *Id.* ¶ 6.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing the Complaint on August 15, 2022.  *See* Compl. at ECF p. 1.  Plaintiff explicitly pleads that Weill Cornell Medicine violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* ("ADA"), by discriminating against her for her "religious beliefs" and "religious practices of non-vaccination."  *Id.* ¶ 3.  Plaintiff seeks "economical [sic] and emotional damages in the amount of $20,000,000" for "lost wages and future earnings."  *Id.* ¶ 9

Defendant filed the instant motion to dismiss on March 20, 2023, along with a supporting memorandum and declaration.  Dkt. Nos. 9–11.  On April 6, 2023, Plaintiff filed a document which she titled: "Letter re Objection to Motion to Dismiss."  Dkt. No. 14.  The letter stated, "I am objecting to the motion to dismiss from the respondent due to respondent not answering the affidavit of fact/proof of claim that was submitted into the record with the initial proof of claim."  *Id.*  On April 10, 2022, the Court issued an endorsement stating, "Under Federal Rule of Civil Procedure 12, a defendant may serve a pre-answer motion to dismiss instead of serving a responsive pleading.  Defendant served a pre-answer motion to dismiss for failure to state a claim on March 20, 2023."  *See* Dkt. No. 15.  The Court *sua sponte* extended Plaintiff's time to

respond to Defendant's motion to dismiss to April 30, 2023, at risk of the Court treating Defendant's motion to dismiss as unopposed. *Id.* Plaintiff did not submit a response. The Court thus treats Defendant's motion to dismiss as unopposed.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 40 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). This obligation "is especially true when dealing with pro se complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002); *see also Weinstein v. Albright*, 261 F.3d 127, 132

4

(2d Cir. 2001) (same). However, while the Court construes *pro se* pleadings liberally, *pro se* plaintiffs are not relieved of the requirement that they plead enough facts so that their claims are plausible. *See Wee Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) ("*[P]ro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure.").

## DISCUSSION

Defendant argues that Plaintiff's complaint fails to state a claim for which relief can be granted. It argues that the Complaint does not allege facts sufficient to establish that Plaintiff had a bona fide religious basis for her objection to vaccination or that she informed Defendant of the basis for her religious exemption prior to the deadline under Defendant's COVID-19 vaccination program. Dkt. No. 10 at 5. Defendant argues that even if Plaintiff could establish a *prima facie* claim for religious discrimination, there was no reasonable accommodation that Defendant could have implemented to allow Plaintiff to continue in her patient-facing role without the undue burden of being forced to violate Section 2.61. *Id.* Defendant also argues that Plaintiff fails to state a claim for disability discrimination under the ADA, because she does not allege that she had an actual or perceived disability or that she requested an accommodation on the basis of that disability. *Id.* at 9. Finally, Defendant argues that Plaintiff fails to allege a claim for intentional infliction of emotional distress, because she does not allege outrageous conduct. *Id.* at 10.

Plaintiff's failure to oppose Defendant's motion does not alone justify dismissal for failure to state a claim for relief. *See McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000) (holding that dismissal based on the plaintiff's failure to respond to a Rule 12(b)(6) motion alone "was error"); *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983) ("Nothing in the Federal Rules of Civil Procedure or the Civil Rules of the Southern District requires a court to grant a

motion by default simply because the nonmoving party fails to respond."). "In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency . . . . Thus, although a party is of course to be given reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Haas v. Com. Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall*, 232 F.3d at 322)); *see also Strachn v. City of New York*, 2020 WL 6291428, at *1 (S.D.N.Y. Oct. 27, 2020); *Blanc v. Cap. One Bank*, 2015 WL 3919409, at *2–3 (S.D.N.Y June 24 2015); *Vargas v. Person*, 2014 WL 1054021, at *2 (S.D.N.Y. Mar. 17, 2014); *O'Garro v. Comm'r of Soc. Sec.*, 2013 WL 5798537, at *2 (S.D.N.Y. Oct. 24, 2013).

I.      **Plaintiff's Claim for Religious Discrimination**

Title VII prohibits employers from discriminating against employees on the basis of religion. 42 U.S.C. § 2000e-2(a)(1). The statute directs an employer to "reasonably accommodate" an employee's "religious observance or practice," unless such accommodations would impose "undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). To make out a *prima facie* case of religious discrimination under Title VII through a failure to accommodate, an employee must demonstrate that (1) she had a bona fide religious belief conflicting with an employment requirement, (2) she informed her employer of this belief, and (3) was disciplined for failing to comply with the employment requirement. *See Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001). Title VII defines religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e-2(a)(1); *see We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 291 (2d Cir. 2021). For a belief to be religious, it is not necessary that it "contemplate an orthodox or traditional God." *Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988). It is sufficient that "the belief 'occupies

a place in the life of its possessor parallel to that filled by the orthodox belief in God.'" *Id.* (quoting *United States v. Seeger*, 380 U.S. 163, 166 (1965)); *see Detwiler v. Mid-Columbia Med. Ctr.*, 2022 WL 19977290, at *3 (D. Or. Dec. 20, 2022), *report and recommendation adopted*, 2023 WL 3687406 (D. Or. May 26, 2023) (applying *Mason* in Title VII context). If the employee is able to make out a *prima facie* case, the burden shifts to the employer to show that it either offered the employee a reasonable accommodation or that doing so would cause an undue burden. *See Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). An accommodation presents an undue burden when the "accommodation would result in substantial increased costs in relation to the conduct of [an employer's] particular business." *Groff v. DeJoy*, 2023 WL 4239256, at *11 (U.S. June 29, 2023).

Plaintiff's complaint relies on the October 12, 2021 decision by the Honorable David N. Hurd of the United States District Court for the Northern District of New York in *Dr. A v. Kathy Hochul*, 567 F. Supp. 3d 362 (N.D.N.Y. 2021), enjoining the NYDOH from "enforcing any requirement that employers deny religious exemptions" to Section 2.61 and from requiring employers to "revoke any exemptions already granted." *Id.* at 377; *see* Compl. ¶¶ 6–7. Plaintiff alleges that Defendant's termination of her employment for failure to become vaccinated violates her "religious beliefs" and "religious practices of non-vaccination," *id.* ¶ 3, and thus violates the court's holding in *Dr. A*, *id.* ¶¶ 6–7.

Her complaint is defective in two respects. First, Plaintiff does not allege any non-conclusory facts about her religious beliefs or that her beliefs would conflict with the vaccination requirement. She alleges that she has "religious beliefs" and that those beliefs include "religious practices of non-vaccination." *Id.* ¶ 3. But those allegations are conclusory. *See Twombly*, 550 U.S. at 555. "[A]n individual's assertion that the belief he holds [is religious] does not . . .

automatically mean the belief is religious." *Mason*, 851 F.2d at 51.  Bald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim for religious discrimination under Title VII.  *See Friend v. AstraZeneca Pharms. LP*, 2023 WL 3390820, at *3 (D. Md. May 11, 2023) ("While Plaintiff's Complaint asserts that he 'had bona fide religious beliefs that conflicted with AstraZeneca's COVID-19 vaccine mandate,' it alleges no facts to allow this Court to assess what Plaintiff's religious beliefs are and how they conflict."); *McKinely v. Princeton Univ.*, 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) ("Without Plaintiff providing facts showing what sincerely held religious belief she holds that prevented her from complying with COVID-19 Policies, Plaintiff fails to adequately allege a cognizable claim for religious discrimination."); *Winsans v. Cox Auto., Inc.*, 2023 WL 2975872, at *3 (E.D. Pa. Apr. 17, 2023) (dismissing Title VII claim where complaint failed to allege sufficient facts to support a reasonable inference that the plaintiff's beliefs were religious in nature); *Meadows v. Lesh*, 2010 WL 373015, at *3 (W.D.N.Y. Sept. 17, 2010) ("[A]t the pleading stage, the complaint must still assert sufficient allegations necessary to establish that plaintiff's claim is based upon a sincerely held religious belief.").

     Moreover, even if Plaintiff had alleged facts to support that she had a sincerely held religious belief that conflicted with the Mandate, her claim would fail because, based on the allegations of the Complaint, Plaintiff's exemption request would have imposed an undue burden on Defendant.  *See Iowa Pub. Emps. Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." (internal quotation marks and citation omitted)).  A long line of cases in the Southern and Eastern Districts of New York have

8

considered the application of Section 2.61's Mandate to persons whose religious beliefs allegedly conflict with the taking of a COVID-19 vaccine. *See, e.g.*, *Algarin v. NYC Health + Hospitals Corp.*, 2023 WL 4157164, at *7–8 (S.D.N.Y. June 23, 2023); *Riley v. NYC Health & Hosps. Corp.*, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023); *Dennison v. Bon Secours Charity Health Sys. Med. Grp.*, 2023 WL 3467143 (S.D.N.Y. May 15, 2023); *Corrales v. Montefoiore Med. Ctr.*, 2023 WL 2711415, at *7–8 n.5 (S.D.N.Y. Mar. 30, 2023); *Shahid-Ikhlas v. NY & Presbyterian Hosp.*, 2023 WL 3628151, at *3–6 (S.D.N.Y May 24, 2023); *Marte v. Montefiore Med. Ctr.*, 2022 WL 7059182, at *2, 4, 6 (S.D.N.Y. Oct. 12, 2022); *Does 1-2 v Hochul*, 2022 WL 4637843, at *15 (E.D.N.Y. Sept. 30, 2022). Those cases have uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from the Mandate at the cost of violating Section 2.61 and thus New York law. *See, e.g.*, *Dennison*, 2023 WL 3467143, at *5 ("Title VII cannot be used to require employers to break the law."). Those cases are indistinguishable from Plaintiff's. Accordingly, Plaintiff's Complaint also fails to state a claim for relief under Title VII.[2]

---

[2] The Supreme Court's recent decision in *Groff v. DeJoy*, 2023 WL 4239256, "clarif[ied] what Title VII [of the Civil Rights Act of 1964] requires." *Id.* at *4. In *Groff*, the Court held that the "more than *de minimis* cost" standard that has become the primary test applied by courts since it was enunciated in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977), "does not suffice to establish 'undue hardship' under Title VII." *Groff*, 2023 WL 4239256, at *10. Instead, in order for a cost to constitute an "undue burden," "the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." *Id.* (citations omitted). The Court does not construe *Groff* as altering the result in this case or as effectively presenting Defendant and all others similarly situated with the Hobson's choice of either violating federal law or violating state law. As discussed below, the Second Circuit has held that "Title VII does not require covered entities to provide . . . a blanket religious exemption allowing them to continue working at their current positions unvaccinated," *We The Patriots USA, Inc.*, 17 F.4th at 292, and, following it, the cases in this Circuit that have previously addressed the question presented here did not rely on *Hardison*'s threshold "*de minimis* cost" standard. Rather, they have concluded that an accommodation that would require the employer to violate the law would itself impose an "undue hardship." *See, e.g.*, *Algarin*, 2023 WL 4157164, at *7 (granting an exemption from a mandatory vaccination requirement would cause "an undue hardship because

Plaintiff's claim relies on Judge Hurd's October 12, 2021 order in *Dr. A v. Hochul*, enjoining NYDOH from enforcing Section 2.61. But that order was vacated by the Second Circuit on October 29, 2021. *See We The Patriots USA, Inc. v. Hochul*, 2021 WL 5103443 (2d Cir. Oct. 29, 2021). In its original opinion of November 4, 2021, the Second Circuit stated: "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer— in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *We The Patriots USA, Inc.*, 17 F.4th at 292. In a subsequent opinion of November 12, 2021, the Second Circuit clarified its holding, explaining that while Title VII did not prevent covered entities from complying with the Mandate, "it may be *possible* under the Rule for an employer to *accommodate*—not *exempt*—employees with religious objections, by employing them in a manner that removes them from the Rule's definition of 'personnel.'" *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021) (emphasis in original). The court went on to explain that "Title VII does not obligate an employer to grant an accommodation that would cause 'undue hardship on the conduct of the employer's business'" and does not require "a blanket religious exemption allowing [healthcare personnel] to continue working at their current positions unvaccinated." *Id*. (quoting 42 U.S.C. § 2000e(j)).

Judge Hurd's order thus is of no help to Plaintiff. As the Honorable Cathy Siebel of the United States District Court for the Southern District of New York put it in *Dennison v. Bon Secours Charity Health System Medical Group*:

> It is irrelevant that, at the time, a court in the Northern District of New York had temporarily enjoined [NY]DOH from "enforcing any requirement that employers deny religious exemptions from COVID-19 vaccination." That a court has

---

it would require Defendant to violate a state rule"); *Riley*, 2023 WL 2118073, at *4 ("Granting this accommodation would cause the defendant the undue hardship of forcing it to violate Section 2.61."). In the words of the Supreme Court, the "reasonable accommodation" that Plaintiff seeks from Defendant—that it violate Section 2.61—is itself "unjustifiable."

> temporarily, and then preliminary, enjoined enforcement does not mean employers were free, let alone required, to ignore the [Mandate]. Were the rule otherwise, employers would be required to accurately predict the outcome of litigation in order to avoid liability for discrimination on the one hand, or liability for violating state law on the other.

2023 WL 3467143, at *5 n.5 (citations omitted). Thus, Plaintiff's claim for religious discrimination under Title VII fails.

## II.  Americans with Disabilities Act

Plaintiff also asserts discrimination pursuant to Title I of the ADA. Compl. ¶ 3. Title I of the ADA provides: "[N]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case for discrimination under the ADA, "a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

Plaintiff's claim under Title 1 of the ADA fails because the Complaint does not allege that Plaintiff is disabled within the meaning of the ADA. An individual has a disability under the ADA if she "has a physical or mental impairment that substantially limits one or more major life activities," has a "record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C.S. § 12102(1). The definitions of "disability" in Section 12102 of the ADA apply to all titles of the ADA. *Widomski v. State Univ. of N.Y.*, 748 F.3d 471, 474 (2d Cir. 2014). Plaintiff's Complaint merely invokes Title I of the ADA without stating facts that support that she is

disabled or that she suffered adverse action based on her disability. *See* Compl. ¶ 3. Religious faith is not a disability. Moreover, although Plaintiff alleges she was on Family and Medical Leave Act ("FMLA") leave from June 24, 2021 to August 1, 2021, *id.* ¶ 4, an individual can take FLMA for any number of reasons, including those unrelated to the individual's physical or mental disabilities, *see* 29 U.S.C. § 2612(a)(1) ("Entitlement to leave"). Further, Plaintiff does not allege that Defendant was aware of her disability or discriminated against her on the basis of her disability. Thus, her claim fails as a matter of law.

### III.   Intentional Infliction of Emotional Distress

Reading the Complaint liberally, as the Court is required to do, Plaintiff also appears to allege a claim for the New York tort of intentional infliction of emotional distress ("IIED"). Under New York law, in order to plead a claim for IIED, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). IIED is a "highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014). The conduct alleged must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985). "[The] New York Court of Appeals . . . has cautioned that a claim for IIED may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Turley*, 774 F.3d at 159 (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)). "[T]here is . . . no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, [and] [P]laintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting [her] cause of action in terms of a tort of

12

intentional infliction of emotional distress." *Murphy v. American Home Prods Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983).[3]

Plaintiff's IIED claim rests upon the implicit proposition that the common law of the State of New York commanded Defendant to do what the positive law of the State forbade—to grant her an exemption from the Mandate. There is no law to support that proposition. The tort of IIED requires a showing that the defendant acted with the "intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress." *Price v. Mount Sinai Hosp.*, 2010 WL 4910218, at *9 (S.D.N.Y. Nov. 23, 2010), *aff'd*, 458 F. App'x 49 (2d Cir. 2012); *see also HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 104 (S.D.N.Y 2020).

The allegations of the Complaint, however, do not establish that Defendant acted with the intent to cause Plaintiff emotional distress. Rather, the allegations establish that it acted with the intent to comply with the law. *See* Restatement (Second) of Torts § 46, cmt. g ("The actor is never liable, for example, where he has done no more than insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."). Accordingly, even if the effect of Defendant's conduct was to cause Plaintiff

---

[3] Some New York courts have determined that plaintiffs "may not bring claims for IIED when the conduct and injuries alleged give rise to a statutory claim for workplace discrimination." *Turley*, 774 F.3d at 159; *see McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167, 169 (1st Dep't 1998) (finding "no reason to apply" IIED where damages for emotional distress were available under New York Human Rights Law); *see also Conde v. Yeshiva Univ.*, 792 N.Y.S.2d 387, 389 (1st Dep't 2005) (similar); *Baliva v. State Farm Mut. Auto Ins. Co.*, 730 N.Y.S.2d 655, 657 (4th Dep't 2001) (similar). *But see Funk v. F & K Supply, Inc.*, 43 F. Supp. 2d 205, 218–20 (N.D.N.Y 1999) (finding that IIED claims may be brought alongside statutory claims). Moreover, some courts, not applying New York law, have held the COVID-19 vaccine mandates do not give rise to IIED claims in workplace settings. *See, e.g., Cala v. Moorings Park Cmty Health, Inc.*, 2022 WL 17405581, at *5 (M.D. Fla. Dec. 2, 2022) (applying Florida law); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 469 (M.D. Pa. 2022) (applying Pennsylvania law) ("[I]t is not extreme and outrageous for a health system to present employees with the choice of a jab, a swab, or their job.").

emotional distress, the tort of IIED cannot excuse her compliance with the Mandate. Doing so would give every citizen an exemption from any law if the application of the law could cause them emotional distress. Such an interpretation of the tort of IIED stretches the tort far beyond its intended boundaries and would undermine the functioning of the legal system established by the legislature. Accordingly, Plaintiff does not state a claim for IIED.

### IV.     Leave to Replead

Defendant argues that the Complaint should be dismissed with prejudice. The Court declines to do so. *Safe Step Walk in Tub Co. V. CKH Indus., Inc.*, 242 F. Supp. 3d 245, 271 (S.D.N.Y. 2017) ("[I]t is within the Court's discretion to *sua sponte* grant leave to amend.").

As a general matter, particularly for a *pro se* plaintiff, a party is entitled to an opinion from the court identifying the deficiencies in her complaint before being forced to amend. *See Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31, 38 (2d Cir. 2018); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189–90 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Moreover, "[g]enerally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks and citation omitted). As the Second Circuit has stated "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be started." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted); *see also Rettino v. New York City Dep't of Educ.*, 2020 WL 4735299, at *6 (S.D.N.Y Aug. 14, 2020) ("A court should grant a *pro se* plaintiff leave to replead his claims when it cannot 'rule out any possibility,

14

however unlikely it may be, that an amended complaint would succeed in stating a claim.'" (quoting *Cruz*, 202 F.3d at 597–98)). Indeed, "notions of simple fairness suggest that a pro se litigant should receive an explanation" if a court grants a motion to dismiss. *Lucas v. Miles*, 84 F.3d 532, 535 (2d. Cir. 1996).

Here, while the Complaint as currently pled fails to state claims for relief, the Court cannot say that Plaintiff is unable to allege any facts that would entitle her to pursue her claims. In particular, although Plaintiff fails to allege her religion, that defect presumably is one that she can cure. *See McKinley*, 2023 WL 3168026, at *2 ("Plaintiff will be allowed an opportunity to amend her Complaint and allege with particularity a sincerely held religious belief justifying her objections or failure to comply with the COVID-19 Policies."). It also may be the case that Plaintiff can plead facts to establish that she did not fall within the category of "personnel" under the Mandate or that she made a request that her employer accommodate her religious objections and not exempt her from the Mandate by employing her in a position that removed her from a position that fell within the definition of "personnel."

"[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). At this early stage in the proceedings, given her *pro se* status, Plaintiff should be given a second chance to plead her claim.

## CONCLUSION

The motion to dismiss is GRANTED without prejudice. Plaintiff must file any amended complaint within sixty days of the date of this Opinion and Order.

The Clerk of Court is respectfully directed to close Dkt. No. 9.

SO ORDERED.

Dated: June 30, 2023
New York, New York

_____
LEWIS J. LIMAN
United States District Judge